# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Robin Albright, | : | Case No. 1:08CV2676 |
| | : | |
| Plaintiff | : | Judge Ann Aldrich |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §405(g) seeking judicial review of defendant's final determination denying plaintiff's claim for disability benefits, 42 U.S.C. §§416(i), 423, is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in her favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff applied for benefits on December 5, 2005, alleging an onset date of August 2, 2005. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "Anxiety/panic disorder with agoraphobia" and "As soon as I get to work I feel like I need to run out of there because panic sets in. I feel like I'm in a fog and I can't concentrate. I feel like something bad is going to happen and it's on my mind all the time and I can't stop thinking about it ."

Upon denial of plaintiff's claim on the state agency level hearing de novo before an

Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on May 19, 2008. Also testifying at that proceeding was a vocational expert, Mr. Thomas Nimberger.

At that hearing the plaintiff testified that she stopped working "Because every day I went into work, as soon as I walk in that door, I wanted to run away. I just went to my cubicle, sat down and started shaking. I couldn't breathe, or felt like I couldn't breathe. My hands and arms would tingle. I just felt like I was in a fog, like I couldn't think clearly." She later stated that since she quit working "I still have panic attacks, but—you know, I don't leave the house, so."

In addition to that mental/emotional disorder, the plaintiff also testified to having a back problem, which limited her ability to stand and/or sit comfortably or to engage in physical activities.

On June 20, 2008 the ALJ entered his opinion denying plaintiff's claim. That decision became defendant's final determination upon denial of review by the Appeals Council on September 13, 2008. The ALJ's "Findings of Fact and Conclusions of Law" were:

1. The claimant meets the insured status requirements of the Social Security Act through March 30, 2010.

2. The claimant has not engaged in substantial gainful activity since August 2, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine (Exhibit 1F at 13); degenerative disc disease of the thoracic spine (Exhibit 1F at 13); obesity (Exhibit 15F at 2); panic disorder (Exhibits 7F, 8F, 9F and 11F); and generalized anxiety disorder (Exhibit 9F at 6) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b). Specifically, she is able to lift, carry, push and pull 20 pounds occasionally and ten pounds frequently. She can sit for six hours and stand and/or walk for six hours in an eight-hour workday. She cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. She can occasionally stoop, kneel, crouch and crawl. She can frequently balance. She is limited to simple, routine work that involves no more than superficial interaction with coworkers and the public and that does not involve negotiation or confrontation.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 8, 1961 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2005 through the date of this decision (20 CFR 404.1520(g)).

On this appeal the plaintiff does not challenge the ALJ's holding that she retains the exertional capability to perform light work. Rather the entire focus is upon her emotional impairment. The specific arguments advanced on behalf of the plaintiff are that "The ALJ erred in rejecting the opinions of Albright's treating physicians, substituting his opinion for that of medical

experts" and "The ALJ erred in relying upon the VE testimony as a substantial evidence that supports his decision of not disabled."

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In Mullen v. Bowen, 800 F.2d 535, at 545 (6th

Cir. 1986), the court cited with approval the following from Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition decision.

Plaintiff's first argument concerning the ALJ's alleged substitution of his judgment for that of the plaintiff's treating physician, Dr. Robert Brophy, turns upon a "Medical Statement Concerning Depression With Anxiety, OCD, PTSD or Panic Disorder" form completed by the doctor under date of May 1, 2008, which in part lends support to the plaintiff's claim of disability. This Court must, however, note that with regard to "Current panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week" the doctor wrote "not while on Xanax." Similarly, although with regard to "complete inability to function independently outside the area of the patient's home due to panic attacks "the doctor checked off "Present," he qualified that response by adding "before treatment with Xanax."

It is the rule in this circuit that the opinion of a treating physician is generally entitled to substantial deference, and may, in given circumstances, even be entitled to complete deference. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

Nevertheless, in order to be entitled to substantial weight such opinion must represent more than a conclusory statement, and must be supported by clinical or diagnostic findings. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 538 (6th Cir. 1981). Absent such supporting medical documentation, or an explanation of the nexus between the physical findings and

the conclusion of disability where that relationship is not patent, the fact-finder may disregard the treating physician's opinion.  Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 212 (6th Cir. 1986).

If an ALJ declines to follow the opinion of a treating physician he/she must give good reasons for doing so.  Wilson v. Commissioner, 378 F.3d 541, 546 (6th Cir. 2004).

In this Court's opinion, the ALJ in this case did offer good reasons for declining to accept the conclusions set out in the form completed by Dr. Brophy in May 2008.  In the body of his opinion the ALJ stated:

> At the hearing, Attorney Balin argued that the claimant's panic disorder meets listing 12.06.  For the reasons that follow, I disagree.
>
> Attorney Balin relied on an assessment by Dr. Brophy dated May 2008 in which Dr. Brophy found that the claimant had "extreme" and "marked" limitations with mental functioning.  For reasons discussed later, I give this opinion little weight.  In terms of meeting a listing, the treating psychiatrist, Barbara Lohn, M.D., felt the claimant had no more than moderate mental limitations because of her impairments (Exhibit 9F).  Consultative psychologist Ruth Haude, Ph.D., examined the claimant on March 6, 2006 and diagnosed panic disorder and personality disorder and offered a global assessment functioning level (GAF) of 70, suggestive of no more than mild symptoms.  Dr. Haude specifically said she saw no symptoms "which would be disabling" (Exhibit 11F).
>
> \*   \*   \*
>
> I give Dr. Brophy's aforementioned opinion little weight for a variety of reasons.  Initially, I note that his opinion is in stark contrast to his progress notes in which he notes the claimant's condition responding nicely to medication.  As late as November 2007, he wrote that she was "overall doing well."  As such, his progress noted [sic] are inconsistent with his opinion and do not support the extreme limitations he assessed.  As a family physician, Dr. Brophy's opinion appears to rest at least in part on an assessment of a mental impairment that is outside his area of expertise.  His opinion contrasts sharply with the other evidence of record, particularly the opinions

6

>of Dr. Lohn and Dr. Haude, which renders it less persuasive.
>
>The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as Dr. Brophy's opinion does in the current case.

Plaintiff's counsel challenges the ALJ's statements that Dr. Brophy's opinion "is in <u>stark</u> contrast to his progress notes"and that "His opinion contrasts <u>sharply</u> with the other evidence of record" (emphasis added). It may be that the ALJ's use of the adjectives "stark" and "sharply" was an exercise in hyperbole, but this Court concurs with the ALJ's view that the conclusion checked off by Dr. Brophy in the May 2008 form contrast with the doctor's progress notes and with the evidence originating with Drs. Lohn and Haude.

The last patient note of Dr. Brophy in the record is dated November 9, 2007. In part it reads "Over all doing well. Tolerating medications well" and "Stable on Xanax alone which I refilled #20 with three refills." Similarly, a note entered April 23, 2007 states that the plaintiff was "doing fairly well on Xanax alone" and was considered stable. It also reads "There is still stress at home with her daughter losing custody of her children but Robin is coping with this with the help of Xanax." In June 2006 Dr. Brophy again stated "The Xanax and Paxil are keeping her symptoms fairly well controlled." A February 2006 note includes "She has not had any recent panic attacks but still has some mild anxiety."

Dr. Lohn's patient notes start with intake in August of 2005, at which time she assigned the plaintiff a GAF of 55, the mid-point of the "moderate symptoms" range. In October the doctor noted

7

that the plaintiff "is doing well on current medication," and upped the GAF rating to 60-65, the "some mild symptoms" range. In December Dr. Lohn rated the plaintiff at 65. In a patient note dated March 24, 2006 the plaintiff's GAF rating was at 65-70.

The plaintiff was assessed in March 2006 by DR. Ruth Haude, a clinical psychologist, upon referral of the state agency authorities. The tenor of the "Summary and Conclusions" portion of Dr. Haude's report reeks of skepticism as to the plaintiff's professed mental/emotional impairment, and concludes with the statement "the writer has no data to indicate that Mrs. Albright would be unable to withstand the pressures and stresses associated with day-to-day work activity and a normal length work day or work. This is not to say that Mrs. Albright suffers no symptoms of panic, but the writer finds no symptoms which would be disabling, particularly for a person whose most recent employment was in an accounting the [sic] department in which she had her own cubicle to work in." While this evaluation would certainly doom the plaintiff's claim of disability, the ALJ stated that "While I considered this opinion, and note that it is consistent with my ultimate finding that the claimant is not disabled, I give it little weight because I have evidence before me at the hearing level that Dr. Haude did not have that convinces me the claimant the claimant has the limitations assessed herein," the limitations assessed by the ALJ including that the plaintiff was capable of "simple, routine work that involves no more than superficial interaction with coworkers and the public and that does not involve negotiation or confrontation."

In light of the foregoing, this Court cannot find that the ALJ's rejection of the totality of the plaintiff's subjective complaints and his discounting of the conclusions checked off by Dr. Brophy in the May 2008 form were beyond his "zone of choice" as trier of the facts.

Plaintiff's second argument premised upon the contention that the jobs identified by the

8

vocational expert as within the capabilities of an individual limited to performing simple routine, one-to-two step tasks is inconsistent with the description of those jobs contained in the Dictionary of Occupational Titles (DOT) is negated by a statement by the VE that his testimony regarding those jobs is consistent with the DOT.[1]

 It is recommended that final judgment be entered in the defendant's favor.

                s/DAVID S. PERELMAN
                United States Magistrate Judge

DATE: December 16, 2009

## OBJECTIONS

 Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[1] This Court would expect that an attorney such as plaintiff's counsel who specializes in Social Security disability matters would be well aware that for the past several years ALJs have been relying on VE testimony and would come to a <u>de novo</u> hearing armed with a copy of the DOT, so as to be able to demonstrate upon cross-examination that a VE's testimony was not consistent with the criteria of the DOT, rather than mount an after the fact attack upon appeal, when the witness does not have the opportunity to explain/defend his/her testimony.